FILED
2023 Mar-17 PM 02:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| Ronald G. Barnes, Gerald Behan, Michael Donald, ) | |
| Pat Evans, Cody Hastings, Scott Key, Jacob Lloyd, ) | |
| Jared Weaver, Michael Michalak, Kevin Chung, ) | |
| Adrian Carrancejie, Shawn Roberts, individually ) | |
| and on behalf of similarly situated persons, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. |
| ) | |
| RMS Protective Services, ) | |
| Mithras Protective Services, Inc., ) | |
| Lyndon Brentnall, Rivas Solutions, LLC. and ) | Collective Action |
| Allied Universal Compliance and ) | |
| Investigations, Inc., ) | |
| ) | |
| Defendants. ) | |

## COLLECTIVE ACTION COMPLAINT

The Plaintiffs Ronald G. Barnes, Gerald Behan, Michael Donald, Pat Evans, Cody Hastings, Scott Key, Jacob Lloyd, Jared Weaver, Michael Michalak, Kevin Chung, Adrian Carrancejie, and Shawn Roberts, individually, and on behalf of similarly situated employees and former employees of the Defendants RMS Protective Services, Mithras Protective Services, Lyndon Brentnall, Rivas Solutions, LLC and Allied Universal Compliance and Investigations, Inc. complain as follows:

1.     The Plaintiffs Barnes, Behan, Donald, Evans, Hastings, Key, Lloyd, Weaver, Michalak, Chung, Carrancejie, and Roberts (hereinafter Plaintiffs) worked security guards for the Defendants RMS Protective Services (hereinafter "RMS"), Mithras Protective Services (hereinafter Mithras), Lyndon Brentnall (hereinafter Brentnall), Rivas Solutions, LLC (hereinafter "Rivas") and/or Allied Universal Compliance and Investigations, Inc. during the work stoppage at

Warrior Met Coal's (hereinafter "Warrior Met") mines and offices in Tuscaloosa and Jefferson County, Alabama. Allied Universal Compliance and Investigations, Inc. (hereinafter "Allied Universal"), Warrior Met's regular provider of security services, engaged the Defendants RMS, Mithras, Rivas and/or Brentnall to provide additional help during the Warrior Met work stoppage. Allied Universal remained in control of all security services provided to Warrior Met during the work stoppage.

2.      Though Defendants RMS/Mithras/Brentnall, Rivas and Allied Universal controlled every aspect of Plaintiffs employment during the work stoppage, they knowingly, intentionally , and wrongfully misclassified them and other similarly situated workers as independent contractors. The willful misclassification of Plaintiffs and their co-workers resulted in Defendants avoiding the payment of overtime premiums and compensation for all hours worked.

## JURISDICTION

3.      This court has subject matter under 29 U.S.C. § 216 of the FLSA and federal question jurisdiction under 28 U.S.C. § 1331.

4.      The Plaintiffs have executed authorizations to file suit. (See Attachment A).

## PARTIES

5.      Plaintiff Ronald Barnes was employed as a security guard by the Defendants to provide security during the work stoppage at Warrior Met Coal. He resides in Columbia, TN.

6.      Plaintiff Gerald Behan was employed as a security guard by the Defendants to provide security during the work stoppage at Warrior Met Coal. He resides in Punta Gorda, FL.

7.      Plaintiff Michael Donald was employed as a security guard by the Defendants to provide security during the work stoppage at Warrior Met Coal. He resides in Lebanon, MO.

8.     Plaintiff Patrick Evans was employed as a security guard by the Defendants to provide security during the work stoppage at Warrior Met Coal. He resides in Goose Creek, SC.

9.     Plaintiff Cody Hastings was employed as a security guard by the Defendants to provide security during the work stoppage at Warrior Met Coal. He resides in Doniphan, MO.

10.     Plaintiff Scott Key was employed as a security guard by the Defendants to provide security during the work stoppage at Warrior Met Coal. He resides in Grapevine, TX.

11.     Plaintiff Jacob Lloyd was employed as a security guard by the Defendants to provide security during the work stoppage at Warrior Met Coal. He resides in Springdale, AR.

12.     Plaintiff Jared Weaver was employed as a security guard by the Defendants to provide security during the work stoppage at Warrior Met Coal. He resides in Anna, TX.

13.     Michael Michalak was employed as a security guard by the Defendants to provide security during the work stoppage at Warrior Met Coal. He resides in Alvin, TX.

14.     Kevin Chung was employed as a security guard by the Defendants to provide security during the work stoppage at Warrior Met Coal. He resides in Aubrey, TX.

15.     Adrian Carrancejie was employed as a security guard by the Defendants to provide security during the work stoppage at Warrior Met Coal. He resides in Tampa, FL.

16.     Shawn Roberts was employed as a security guard by the Defendants to provide security during the work stoppage at Warrior Met Coal. He resides in Riverview, FL.

14.     The Defendant RMS Protective Services is an unincorporated Florida company with a principal place of business in Clearwater, Florida. RMS maintains a website under rmsiusa.com. RMS does not have a registered agent for service in the State of Alabama. RMS Protective Services does not appear to be actively registered with the State of Florida. RMS, however, has conducted business in the State of Alabama.

15.     The Defendant Mithras Protective Services is Florida corporation with a principal place of business in West Palm Beach, Florida. Defendant Mithras shares common ownership with RMS Protective Services and has the same mail address as RMS. Mithras does not have a registered agent for service of process in Alabama. Mithras, however, has conducted business in the State of Alabama.

16.     The Defendant Lyndon Brentnall is the President, Chief Operating Officer and, upon information and belief, the majority owner of both RMS Protective Services and Mithras Protective Services, Inc. The Defendant Brentnall controls the operations and assets of both RMS and Mithras. The Florida Secretary of State's office list a St. Petersburg, FL address for Mr. Brentnall. Mr. Brentnall has conducted business in the State of Alabama.

17.     The RMS, Mithras and Brentnall Defendants operate as a single entity or joint enterprise. For example. RMS, Mithras and Brentnall share the same business addresses and are under common ownership and control. Brentnall uses both Mithras and RMS to conduct business as a security services provider. Upon information and belief, RMS does not have any assets separate and apart from Mithras and Brentnall.

18.     The Defendant Rivas Solutions, LLC is a limited liability company with its principal place of business in De Queen, AR. Rivas does not have a registered agent for the service of process in the state of Alabama however has conducted business in the state of Alabama. Rivas subcontracted with either RMS or Allied Universal Security Services to provide additional security guards for the Warrior Met Coal mining operation in Tuscaloosa County and Jefferson County.

19.     The Defendant Allied Universal Security and Investigations, Inc. is a private corporation with its principal headquarters in Raleigh, NC. Warrior Met contracts with Allied

Universal to provide security services at its coal mining operation in Tuscaloosa County and Jefferson County.

20.    All of the Defendants are employers within the meaning of the FLSA.

## FACTUAL ALLEGATIONS

21.    On or about April 2, 2021, the employees at Warrior Met engaged in a concerted work stoppage. Prior to the work stoppage, Allied Universal provided routine security services for Warrior Met.  To provide security services during the work stoppage, Allied Universal contacted Brentnall and arranged for him to recruit additional workers to provide security during the work stoppage. Because the duration of a work stoppage was undetermined, Allied Universal sought to avoid bringing on its own staff and thus worked through Defendant Brentnall and his security companies RMS and Mithras (collectively the RMS Defendants) and with Rivas.

22.    The RMS Defendants and Rivas recruited Plaintiffs through a word-of-mouth network to work as security guards during the Warrior Met work stoppage.  The Plaintiffs are individuals who have experience working security during work stoppages.

23.    The RMS Defendants and Rivas arranged for the Plaintiffs to travel to Tuscaloosa to work as additional back up security guards for Allied Universal and Warrior Met for the duration of the work stoppage.  The RMS Defendants would schedule airport pickups for the workers arriving in Birmingham and transport them to the hotel. Some Plaintiffs were hired by Rivas but were under the direct control of the RMS Defendants while working during the work stoppage.

24.    When hired on as a security guard at the Warrior Met property, the Plaintiffs and other similarly situated workers had to complete paperwork to be employed as a security guard. For example, the RMS Defendants required the Plaintiffs and other co-workers to complete an employee direct deposit form and paid them on a bi-weekly basis. The Plaintiffs and similarly

situated workers underwent an orientation period that included mine safety training course. The mine safety training was provided by Warrior Met.

25.     The RMS Defendants provided hotel accommodations for the Plaintiffs while working as security at Warrior Met. The RMS Defendants assigned each Plaintiff a room-mate on "the opposite schedule." The hotel was located in Tuscaloosa, approximately 30 to 45 minute drive from Warrior Met's various and disperse coal mine properties in Tuscaloosa County and Jefferson County, AL.

26.     The RMS Defendants also provided daily transportation to and from the Warrior Met property. The vans used to transport Plaintiffs to and from Warrior Met were rentals. On occasion, the Plaintiffs were asked to clean the vans.

27.     The RMS Defendants assigned a supervisor to oversee Plaintiffs' work performance. The Plaintiffs were assigned to a specific location on Warrior Met's property and given a daily schedule. The RMS Defendants assigned the Plaintiffs to 12 hour shifts. Plaintiffs worked seven days a week while assigned to Warrior Met.

28.     The RMS Defendants also assigned some of the security guards to work as a "rover." As the name indicates, the rover did not work at a stationary location but moved around filled in as needed in both Tuscaloosa County and Jefferson County. The rovers also acted as the crew leaders and interacted with RMS Defendant supervision and with Allied Universal employees.

29.     The rovers conducted a pre-shift meeting at the hotel which typically lasted fifteen (15) minutes. During the pre-shift meeting, the rovers discussed work assignments, activity reports and any other tasks assigned to the Plaintiffs during their 12 hour shift. After the pre-shift meeting was completed, the Plaintiffs were loaded into the rental van and driven to the various Warrior

6

Met sites. Depending on traffic and specific location, the travel time was approximately 30 to 45 minutes long each way.

30.    Plaintiffs were paid a daily rate of $300 plus a $50 per diem. The effective hourly rate for the 12-hour shift was approximately $29.  However, Plaintiffs routinely worked more than twelve (12) hours each day. Plaintiffs typically worked fourteen (14) to sixteen (16) hour days, seven days per week.

31.    The RMS Defendants assigned Leigh Wood and Trace Barnes as site supervisors. Wood and Barnes worked on schedules, oriented new hires, communicated with Allied Universal and Warrior Met staff, and disciplined workers for poor performance.  Wood and Barnes had the authority to send a worker home and to reinstate workers.

32.    The RMS Defendants imposed a dress code on the Plaintiffs and similarly situated workers and also imposed a code of conduct reminding them that they "are representative of RMS Protective Services, AUS and Warrior Met coal."

## JOINT EMPLOYER ALLEGATIONS

33.    The Defendant Brentnall is a joint employer with RMS and Mithras because he exercised operational control over RMS and Mithra. "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Patel v. Wargo*, 803 F.2d 632, 637-38 (11th Cir. 1986).

34.    The Defendant Allied Universal is a joint employer of the Plaintiffs because they exercised control over the Plaintiffs day to day work. Allied Universal dictated the locations at Warrior Met where security guards from RMS would be located. Allied Universal supervisors would directly check on the work performance of Plaintiffs and similarly situated workers through

monitoring of the Plaintiffs in person and by constant video surveillance. If a RMS security guard was observed by an Allied Universal employee not performing their assignments, they would have the RMS security guard removed from the property. The RMS Defendants informed the Plaintiffs that they worked under the direction of Allied Universal personnel.

35.     Allied Universal installed and continually monitored security cameras across Warrior Met facilities allowing them to monitor and observe the RMS employees while performing their security assignments.

36.     Allied Universal supervisors also gave Plaintiffs and similarly situated employees work assignments and directly assisting Allied Universal as needed and at Allied Universal's direction. The Plaintiffs worked closely with Allied Universal employees and would report to them any activity they deemed suspicious.

37.     Upon information and belief, Allied Universal provided the Plaintiffs with vehicles to operate while on the Warrior Met property.

<u>FLSA COLLECTIVE ACTION ALLEGATIONS</u>

38.     The Plaintiffs bring Count I as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of themselves and all similarly situated workers.

39.     For purposes of this proposed collective action, "similarly situated employees" means all RMS and Rivas security guards/personnel assigned work at the Warrior Met's Tuscaloosa County and Jefferson County properties and who worked at any time as security guard at this location since April 2, 2021.

40.     All non-exempt RMS and Rivas security guards/personnel work under the same terms and conditions of employment, are subject to the same work rules and policies regarding time entry and are under common supervision.

41.    Accordingly, certifying Count I below as a collective action will provide the most efficient means for adjudicating the Plaintiffs and similarly situated security guards' claims under 29 U.S.C. § 207(a)(2) for unpaid compensation.

42.    The Plaintiffs request that the Court authorize them to serve as a representatives of a proposed collective action, that the Court grant conditional certification the case upon proper motion as a collective action and that the Court authorize the Plaintiffs through counsel to send a court approved notice to all similarly situated workers informing them of their right to join this action.

## COUNT I

### (Unpaid Compensation)

43.    Pursuant to 29 U.S.C. § 207(a)(2), the Defendants were required to pay non-exempt employees such as the Plaintiffs and similarly situated security guards at the rate of one and half times their regular hourly rate for all hours worked over forty (40) hours in a work-week.

44.    The Plaintiffs and similarly situated security guards were scheduled to work 12 hours shifts, seven days per week during their assignments at Warrior Met. The Plaintiffs and similarly situated security guards worked in excess of 84 hours per work week. The Defendants, however, only paid Plaintiffs and similarly situated security guards a daily rate and did not pay them for all hours worked.

45.    The Defendants misclassified the Plaintiffs and similarly situated security guards as independent contractors in order to avoid paying an overtime premium for all hours worked over forty hours in a work-week as required under 29 U.S.C. § 207.

46.    The Defendants had actual knowledge of the policies and practices resulting in the failure to pay the Plaintiffs and similarly situated security guards for all hours worked and any

overtime premium owed for hours worked over forty (40) hours during a workweek. The Defendants willfully failed to pay Plaintiffs and similarly situated security guards the overtime premium required under 29 U.S.C. § 207.

47.    Wherefore, the Plaintiffs individually and on behalf of similarly situated security guards request that the Court order the Defendants, jointly and severally, to (a) pay Plaintiffs and similarly situated security guards unlawfully withheld wages, (b) liquidated damages in an equal amount, (c) reasonable attorneys' fees and costs, (d) prejudgment interest and (e) all other legal and equitable relief the Court deems appropriate to remedy Defendants' violations of the FLSA.

### JURY TRIAL DEMAND

The Plaintiffs request a trial by jury to the full extent provided under the FLSA and the Seventh Amendment to the United States Constitution.

John R. Jacobs (ASB 5254O72J)
J. Thomas Walker (ASB 586 O59W)
Paisley Newsome (ASB 5552F13A)
Attorneys for the Plaintiffs

OF COUNSEL:

Maples, Tucker & Jacobs, LLC
2001 Park Place N.
Suite 1325
Birmingham, AL 35203
205-322-2333
205-322-4962 facsimile
205-201-7081 direct
jack@mtandj.com

**DEFENDANTS TO BE SERVED BY CERTIFIED MAIL:**

**RMS Protective Services**
**c/o Mr. Lyndon Brentnall**
**740 4th Street North**
**514**
**St. Petersburg, FL 33701**

**Mithras Protective Services, Inc.**
**c/o Mr. Lyndon Brentnall**
**740 4th Street North**
**514**
**St. Petersburg, FL 33701**

**Lyndon Brentnall**
 **c/o Mr. Lyndon Brentnall**
**740 4th Street North**
**514**
**St. Petersburg, FL 33701**

**Allied Universal Compliance and Investigations, Inc.**
**c/o Prentice Hall Corporation System, Inc.**
**641 South Lawrence St.**
**Montgomery, AL 36104**

**Rivas Solutions, LLC**
**c/o Arley Rivas**
**1803 N 9th Street**
**De Queen, AR 71832**